**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                        |   |                        |
|----------------------------------------|---|------------------------|
|                                        | * |                        |
| **PULTE HOME CORPORATION, ET AL.,**    | * |                        |
| **Plaintiffs,**                        | * |                        |
| **v.**                                 | * | **Case No.: GJH-14-3955** |
| **MONTGOMERY COUNTY, MARYLAND, ET AL.,** | * |                      |
| **Defendants.**                        | * |                        |
|                                        | * |                        |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This is a civil rights action brought by Pulte Home Corporation and Shiloh Farm Investments, LLC (collectively, "Pulte") against Montgomery County, Maryland (the "County") and the Maryland-National Capital Park and Planning Commission (the "Commission") (collectively, "Defendants") for allegedly violating Pulte's state and federal civil rights by enacting land use legislation that adversely affected Pulte's ownership interests in approximately 541 acres of land it owns in Clarksburg, Maryland. Presently before the Court are two fully briefed motions: Pulte's motion to remand to state court (*see* ECF No. 21) and the Commission's motion to dismiss. *See* ECF No. 19. A hearing is unnecessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, Pulte's motion to remand is DENIED and the Commission's motion to dismiss is DENIED.

## I.    BACKGROUND

Pulte is in the business of residential real estate development. Between November 2004 and January 2006, Pulte purchased or entered into a contract to purchase approximately 541

acres of property (the "Development Land") in Clarksburg, Maryland. *See* ECF No. 2 at ¶ 5.

Until July 2014, the Development Land was governed by the 1994 Clarksburg Master Plan

("1994 Master Plan"), which divided Clarksburg development into four stages. *See id.* at ¶¶ 7-8.

Under Stage Four of the 1994 Master Plan, the Development Land, as well as other parts of

Clarksburg, were to be developed into residential communities at "specific residential densities"

based upon the zoning affixed to the land by the County in 1994. *See id.* at ¶ 8.  Specifically, the

Development Land was zoned for residential development under the RE-1/TDR-2 classification,

which allowed for the development of one dwelling unit per acre, but encouraged two units per

acre through the purchase of County Transferable Development Rights ("TDRs"). *See id.* at ¶ 9.

Pulte contends that, in reliance on this zoning designation and the County's TDR policies, it

purchased 323 TDRs from County farmers for over $12 million. *See id.* at ¶¶ 9, 15. Under the

Master Plan and RE-1/TDR-2 zoning, Pulte estimated that it could build between 954 and 1,007

detached homes and townhomes on the Development Land. *See id.*

Before development could proceed into Stage 4, however, the 1994 Master Plan required

the completion of several triggers, including a baseline biological assessment of Little Seneca

Creek and Ten Mile Creek watersheds, the issuance of 2,000 building permits east of Interstate

270 as part of Stages 2 and 3, and a County report evaluating water quality best management

practices and other mitigation techniques. See *id.* at ¶ 10. Pulte maintains that these conditions

were satisfied by 2009, at which time the 1994 Master Plan directed the County to consider

Water and Sewer Plan amendments to permit extension of public facilities to the Ten Mile Creek

area. *See id.* at ¶ 11. Thus, on May 12, 2009, in reliance on the 1994 Master Plan directives, Pulte

submitted its Water and Sewer Category Change Request application to the Montgomery County

Department of Environmental Protection ("DEP") for review by the County and the

Commission. *See id.* at ¶¶ 11-12. Pulte contends that since 2009, however, the County has failed to act on its completed application, preventing Pulte from proceeding with other aspects of Defendants' development approval process. See *id.* at ¶¶ 15-20, 29-30.

Around the same time that Pulte submitted its Water and Sewer Category Change Request, Pulte also submitted a Pre-Application Concept Plan to the Commission pursuant to the County subdivision ordinance. The Commission, however, refused to endorse the plan despite the fact that, according to Pulte, the plan fully conformed with the zoning ordinance. *See id.* at ¶¶ 21-28. Moreover, Pulte contends that the Commission refused to meet with it regarding its Pre-Application Concept Plan and eventually ceased responding to its requests altogether. *See id.* at ¶¶ 23-27. Instead, Pulte alleges, rather than proceeding with the Stage 4 development as directed by the 1994 Master Plan, the County and the Commission began a multi-year campaign aimed at curtailing permissible development of the Development Land.

In particular, Pulte alleges that Defendants reopened the 1994 Clarksburg Master Plan upon which Pulte relied when making its original investment of over $53 million into the Development Land. According to Pulte, the County requested that the Commission re-open the 1994 Clarksburg Master Plan in order to study the Ten Mile Creek watershed, which Pulte contends was an unnecessarily extreme land use approach since the Commission could have studied the watershed without re-opening the Master Plan. *See id.* at ¶ 36. Based on this study, the Commission prepared a draft amendment to the Master Plan and submitted it to the County on October 25, 2013. *See id.* at ¶ 54. Pulte maintains that the amendment included unprecedented regulatory restrictions and exactions aimed specifically at the Development Land based on technical reports provided by consultants retained and controlled by the Commission. *See id.* The

3

County then revised the Commission's draft amendment and, according to Pulte, approved an even more stringent version. *See id.* at ¶ 65.

In its consideration of the Commission's Draft Master Plan Amendment, Pulte contends that Defendants failed to adequately discuss, analyze, or refute any of Pulte's expert reports submitted into the public record addressing what it perceived as errors and misstatements in the Commission's draft and in the work of its consultants. *See id.* at ¶ 61.  After the close of the public record, Pulte alleges that the County solicited extensive new testimony from state and federal government employees in an attempt to justify Defendants' actions. *See id.* at ¶ 64. Not long after, the Commission then adopted the County's version of the Master Plan Amendment. *See id.* at ¶¶ 68, 71.

Following Defendants' approval and adoption of the 2014 Master Plan Amendment, Pulte contends that Defendants drafted and implemented the Clarksburg West Environmental Overlay Zone, which imposed a radically low impervious cap on Pulte's use of the Development Land. *See id.* at ¶¶ 69-70, 72. Then, two days later, the Commission amended its Montgomery County development regulations, called Environmental Guidelines, which, according to Pulte, imposed extraordinary restrictions on any future use and development of the Development Land. *See id.* at ¶ 73. Additionally, the Commission prepared, and the County enacted, a downzoning of the Development Land from a residential to an agricultural classification. *See id.* at ¶¶ 54, 80.

Believing that Defendants' land use, planning, and zoning actions arbitrarily and capriciously targeted the Development Land, Pulte filed suit against the County and the Commission on November 14, 2014 in Montgomery County Circuit Court. In its complaint, Pulte contends that Defendants' actions violated its due process and equal protection rights and amounted to a taking of private property requiring just compensation. The County removed the

case to this Court on December 18, 2014. *See* ECF No. 1. Pulte has filed a motion to remand to state court. *See* ECF No. 21. Additionally, the Commission has filed a motion to dismiss.[1] *See* ECF No. 19. For the reasons stated more fully below, the Court will DENY both motions.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it "fails to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To that end, the Court bears in mind the requirements of Fed.R.Civ.P. 8, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663.

## III.    DISCUSSION

### A.    Motion to Remand

Prior to addressing the Commission's motion to dismiss, the Court must briefly address Pulte's motion to remand to state court. *See* ECF No. 21.  Pulte contends that the "Court should abstain and issue a remand order based on the well-established *Burford* abstention doctrine."

---

[1] The County has not filed a motion to dismiss; instead, it answered Pulte's complaint on January 14, 2015. *See* ECF No. 24.

ECF No. 21-1 at 6 (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)). In the alternative, Pulte

asks the Court to "exercise its discretion to decline jurisdiction under the supplemental

jurisdiction doctrine . . . [of] 28 U.S.C. § 1367" and remand the entire case. ECF No. 21-1 at 6.

Regarding the latter request, the Court "is not permitted to remand a federal claim" even when

state law claims predominate the action or when the case involves novel and complex issues of

state law, as Pulte contends is the case here. *75-80 Properties, LLC v. Bd. of Cnty.*

*Commissioners of Frederick Cnty., Maryland*, Case No. 09-2977, 2010 WL 917635, at *6 (D.

Md. Mar. 10, 2010); *see also e.g.*, *Baker v. Kingsley*, 387 F.3d 649, 656-57 (7th Cir. 2004) ("It is

an abuse of discretion for a district court to remand a federal claim that is properly before

it."); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002) ("[A] district court has no

discretion to remand a claim that states a federal question."); *Borough of West Mifflin v.*

*Lancaster*, 45 F.3d 780, 787 (3rd Cir. 1995) (explaining that "nothing in § 1367(c) authorizes a

district court to decline to entertain a claim over which it has original jurisdiction and,

accordingly, that section clearly does not sanction the district court's remand of this entire case,

including the federal civil rights claims, to the state court"). The Court therefore cannot decline

to exercise jurisdiction under § 1367.

As for Pulte's request that the Court abstain from exercising jurisdiction over this case

under the *Burford* abstention doctrine, the Court will likewise decline that request. The Supreme

Court has repeatedly instructed that courts have "a virtually unflagging obligation to exercise

their jurisdiction . . . ." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (internal quotation

marks omitted). Thus, "[a]bstention from the exercise of federal jurisdiction is the exception, not

the rule." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813 (1976)

(quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959)).

The *Burford* abstention doctrine "'justif[ies] the dismissal of a federal action' in a 'narrow range of circumstances' when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because there exist (1) 'difficult questions of state law . . . whose importance transcends the result in the case then at bar' or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (internal citations omitted). The Supreme Court has admonished that a federal court may dismiss a case under *Burford* abstention only when presented with one of these "extraordinary circumstances." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996). This case presents neither situation.

The Commission contends that the Court should abstain from deciding the merits of this case due to the "[l]and use and zoning issues[,]" which, according to Pulte, are "traditionally regulated by the states." ECF No. 21-1 at 8. "While the [C]ourt recognizes that resolving routine land-use disputes 'is simply not the business of the federal courts[,]' *Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 67 (4th Cir. 1992), the [C]ourt is also cognizant that the Constitution protects against arbitrary and unreasoned action in zoning practices." *Frall Developers, Inc. v. Bd. of Cnty. Comm'rs for Frederick Cnty.*, Case No. 07-2731, 2009 WL 2487071, at *2 (D. Md. Aug. 12, 2009); *see also Scott v. Greenville County*, 716 F.2d 1409, 1419-21 (4th Cir. 1983). Throughout Pulte's complaint, it repeatedly contends that Defendants acted arbitrarily and capriciously by, among other things, drafting and adopting amendments to the 1994 Master Plan and by downzoning the Development Land so as to deprive Pulte of its constitutionally protected property interests. *See* ECF No. ¶¶ at 85-88, 90, 113-115, 122. Thus, Pulte's claims, while requiring reference to Maryland land use law, are, at their core, constitutional claims for which this Court is well-equipped to handle. The Court will therefore

7

decline Pulte's invitation to abstain from exercising jurisdiction as this case does not involve difficult questions of state law, nor does it require this Court to disrupt Maryland's efforts to establish coherent land-use policies. *See Martin*, 499 F.3d at 364. Accordingly, Pulte's motion to remand is denied.

###     B.     Motion to Dismiss

Having denied Pulte's motion to remand, the Court must now turn to the Commission's motion to dismiss. In its motion, the Commission argues that Pulte's complaint must be dismissed because the Commission did not have the "legal authority to zone, rezone, upzone, or 'downzone' property in Montgomery County" and therefore could not have caused Pulte's injuries. *See* ECF No. 19-1 at 7. Thus, although not explicitly argued as such, the thrust of the Commission's motion to dismiss is that Pulte lacks standing to sue the Commission.

There are two types of standing: Article III standing, which ensures that a suit presents a "case" or "controversy" as required by the Constitution, and "prudential standing," which encompasses "judicially self-imposed limits on the exercise of federal jurisdiction." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The Commission has not challenged Pulte's prudential standing; accordingly, such a challenge has been waived. *See, e.g.*, *Bd. of Natural Res. of State of Wash. v. Brown*, 992 F.2d 937, 945-46 (9th Cir. 1993). Instead, the Commission challenges Pulte's standing on Article III grounds.

 Article III of the Constitution restricts federal courts to the adjudication of cases and controversies. This requirement of standing is "perhaps the most important" condition of justiciability, *Allen v. Wright*, 468 U.S. 737, 750, (1984), as it ensures that a plaintiff has a personal stake in the outcome of a dispute, and that judicial resolution of the dispute is appropriate. *See Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005). To meet the

constitutional requirement for Article III standing, a plaintiff must plausibly allege that: 1) he or she suffered an "injury in fact" that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the Commission argues that Pulte's injuries are not fairly traceable to it because the Commission did not have the authority to engage in the various acts that Pulte contends caused its injuries. *See* ECF No. 19-1 at 4, 6-19.

The Commission is correct that in order to invoke federal jurisdiction, a plaintiff must show that his or her injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560. The "fairly traceable" standard, however, is "not equivalent to a requirement of tort causation." *Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n. 7 (4th Cir. 1992) (quoting *Pub. Interest Research Group, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990)). Nor does the fairly traceable standard "require the defendant to be the only party responsible for the injury, or the party that contributes most significantly to the injury." *EarthReports, Inc. v. U.S. Army Corps of Engineers*, Case No. 10-01834, 2011 WL 4480105, at *6 (D. Md. Sept. 26, 2011). Rather, all that is required is that a plaintiff show that the defendant's conduct either "causes *or contributes* to the kinds of injuries alleged by the plaintiffs." *Watkins*, 954 F.2d at 980 (emphasis added).  Here, Pulte has adequately alleged that the Commission's actions have contributed to its purported injuries. To fully understand why, it is helpful for the Court to explain the role of the Commission, in general.

"The Commission is a bi-county agency created by the [Maryland] General Assembly to develop both general and functional plans of proposed land development for the Washington

Metropolitan District, which consists of most of Montgomery and Prince George's Counties."
*Maryland-Nat. Capital Park And Planning Com'n v. Anderson*, 164 Md. App. 540 (2005). The
Maryland General Assembly "created the Commission as the state agency responsible for
coordinating planning, zoning and recreational activities within the Washington metropolitan
area which otherwise would be the sole responsibility of the counties." *O & B, Inc. v. Md.-Nat'l
Capital Park and Planning Comm'n*, 279 Md. 459, 465 (1977). Contrary to the Commission's
argument, its role is not simply "advisory or ministerial." ECF No. 19-1 at 7. Rather, Maryland
law specifically authorizes the Commission to acquire and manage lands for public parks, draft
and adopt master plans, draft zoning and subdivision ordinances, adopt development regulations,
act on land development applications, and recommend other land use policies to Montgomery
County. *See* Md. Code Ann., Land Use § 15-113 (general powers); *see also e.g.*, § 15-302
(power to acquire and develop land); § 17-101 (power to acquire, develop, and control property
for parks); § 17-104 (providing title and control of property to Commission); § 21-104 (requiring
a general plan to contain Commission's recommendations); § 21-202 (Commission's power to
initiate a plan); §21-203 (Commission's power to adopt a plan); §23-104 (Commission may
adopt subdivision regulations and amendments).

Thus, while the Commission may not have the authority to formally approve or enact a
master plan or amendments thereto, the Commission's role in land use regulation is nevertheless
essential to continued real estate development in Montgomery and Prince George's Counties. To
insulate the Commission from judicial review based solely on the fact that it did not have the
formal power to enact or implement the Master Plan or its Amendment would amount to a severe
limitation to Article III standing jurisprudence, especially where, as here, the Commission had
other non-discretionary and non-delegable duties as it relates to drafting and adopting

development plans and amendments. The law simply does not support such a result. In fact, the

Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997) flatly rejects it.

> In *Bennett*, the plaintiff sued one government agency, 'Agency A,' which had coerced a second agency, 'Agency B,' into enacting certain regulations that injured the plaintiff. The Court held that the plaintiff had standing to sue 'Agency A,' even though it did not actually enact the regulations at issue. The rationale was that the plaintiff's injuries were directly traceable to the actions of "Agency A," because "Agency B" would not have enacted the challenged regulation "but for" the actions of 'Agency A.'

*The Pitt News v. Fisher*, 215 F.3d 354, 361 (3d Cir. 2000). The same logic of *Bennett* applies

here.

Specifically, Pulte contends that, pursuant to its statutory mandate, the Commission

drafted and later adopted the Master Plan Amendment which severely restricted Pulte's use of

the Development Land by, among other things, downzoning the property. According to Pulte, it

was the Commission who retained and oversaw the work of the consultants whose allegedly

flawed reports were used by it and the County to justify their planning, zoning, and regulatory

decisions impacting the Development Land. *See* ECF No. 2 at ¶¶ 37, 45. These reports,

according to Pulte, were conducted at a "'planning level' of detail (ignoring the actual ground),

used mistaken assumptions with respect to development properties in the area, and grossly

underestimated peak flows and volumes in the watershed." ECF No. 30 at 11 (citing ECF No. at

2 at ¶¶ 43, 48-49, 53, 60). Pulte contends that the Commission made no attempt to calibrate or

verify the data from similar watersheds. *See id.* at ¶¶ 48, 53. Additionally, Pulte alleges that the

Commission's consultants also failed to consider the appropriate water quality management

techniques into their modeling, in violation of state and county law and inconsistent with

industry standards. *See id*. at ¶¶ 41, 53, 57.

Thus, it was based on these allegedly flawed opinions and reports created by the Commission or its agents that Pulte contends the County justified the Master Plan Amendment and its downzoning of the Development Land. Assuming the truth of these allegations, as the Court must at this stage, Pulte has adequately alleged that the Commission's actions contributed to its alleged injuries. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 828 (D. Md. 2013) (finding traceability to be "met because the Plaintiffs have sued all relevant State Defendants conceivably involved in 'passing' and 'enforcing' *Tracey,* as well as the private party (Armistead) who has allegedly 'implemented' the decision, to the Plaintiffs' detriment"); *see also N. Carolina Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 83 (D.D.C. 2007) (recognizing that the "fairly traceable" inquiry "asks whether the agency's actions materially increase the probability of injury"). As such, the Court will deny the Commission's motion to dismiss.

IV.     **CONCLUSION**

For the reasons stated above, Pulte's motion to remand is DENIED and the Commission's motion to dismiss is DENIED.

Dated: <u>July 17, 2015</u>                          <u>        /S/            </u>
                                                     George J. Hazel
                                                     United States District Judge