IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PULTE HOME CORPORATION and
SHILOH FARM INVESTMENTS, LLC,          *

       Plaintiffs,          *

v.                                                    Case No. GJH-14-3955

                                *

MONTGOMERY COUNTY MARYLAND,
*et al.*,                                          *

       Defendants.          *

    *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

This case is a civil rights action brought by Pulte Home Corporation and Shiloh Farm Investments, LLC (collectively, "Pulte") against Montgomery County, Maryland and the Maryland-National Capital Park and Planning Commission (collectively, "Defendants"). The action centers on the Defendants' enactment of land use legislation that adversely affected Pulte's interests in approximately 541 acres of land that it owns in Clarksburg, Maryland. Pulte alleges that the Defendants violated its constitutional rights to due process and equal protection, and that the Defendants' actions amounted to a taking of private property requiring just compensation.[1] Judge Hazel entered a scheduling order on January 28, 2016 (ECF No. 59) and discovery has been ongoing since that time. The current discovery deadline is September 27,

---

[1] In its 71 page complaint, Pulte raises five claims against the Defendants. (ECF No. 2.) Count I alleges that the Defendants deprived Pulte of its substantive due process rights. (*Id.* at 54.) Count II alleges that the Defendants violated Pulte's equal protection rights. (*Id.* at 57.) Count III alleges that the Defendants' actions amount to a taking of private property for public use without just compensation. (*Id.* at 60.) Count IV, the counterpart to Count I, alleges that the Defendants violated Pulte's procedural due process rights. (*Id.* at 62.) Count V alleges a "violation of Article 19 of the Maryland Constitution guaranteeing a right to a remedy for injury to one's property." (*Id.* at 64.) Judge Hazel's July 17, 2015 memorandum opinion provides a more robust factual summary than is included in this decision. (ECF No. 33 at 1-5.)

2017. (ECF No. 133.) Several motions related to discovery disputes are pending before the Court. This memorandum addresses the motions filed at ECF Nos. 85, 86, and 94, which concern Pulte's efforts to obtain discovery from several non-party citizens and citizen groups.[2]

## I.   Procedural Background

On August 15, 2016, Pulte filed two motions to compel discovery from non-parties. The first motion (ECF No. 85) seeks discovery from the following non-party organizations and non-party individuals: (1) Audubon Naturalist Society, Inc., (2) Diane Cameron, (3) Save Ten Mile Creek Coalition, (4) Friends of Ten Mile Creek and Little Seneca Reservoir, Inc., (5) Liveable Clarksburg Coalition, Inc., (6) Seneca Creek Watershed Partners, Inc., (7) Sierra Club, and (8) John Cook. The second motion (ECF No. 86) seeks discovery from five other non-party organizations: (1) Conservation Montgomery, Inc., (2) Clean Water Action, (3) Muddy Branch Alliance, Inc., (4) Montgomery Countryside Alliance, Inc., and (5) Sugarloaf Citizens Association, Inc. The Court will refer collectively to the non-party organizations and non-party individuals as the "citizen groups" or the "groups."[3] The citizen groups, through counsel, filed a response in opposition to Pulte's motions to compel (ECF No. 95) and a cross-motion to quash the subpoenas that Pulte had issued to the citizen groups (ECF No. 94). Once the motions to compel and the cross-motion to quash were fully briefed (*see* ECF Nos. 103 & 104), the parties filed certificates pursuant to Local Rule 104.7. (ECF Nos. 106 & 107.)

---

[2] On August 16, 2016, Judge Hazel referred this case to me for the resolution of discovery disputes and related scheduling matters. (ECF No. 87.)

[3] Notably, Pulte does not allege in its complaint that the citizen groups violated its rights or that they are in any way liable to Pulte. Pulte seeks discovery from the citizen groups because they have information that is relevant to its claims against the Defendants.

On January 12, 2017, a motions hearing was held.[4] (ECF No. 130.) At the conclusion of the hearing, the Court ordered Pulte and the citizen groups to make further efforts to resolve their disagreements without judicial intervention. In a letter order filed on January 13, 2017, the Court ordered:

> By February 2, 2017, Pulte shall email five document requests to counsel for the non-party citizen groups. By February 9, 2017, counsel for the parties shall meet in person to confer in an attempt to reach an agreement on these issues. By February 16, 2017, counsel for the parties shall file a joint certificate stating whether complete agreement has been reached. If disputes remain between the parties, they may simultaneously file letters, not to exceed three single-spaced pages, explaining their respective positions. No responses to any letters will be permitted.

(ECF No. 129.)

Pulte and the citizen groups held a meeting to attempt to resolve their disagreements, but the meeting was not successful. Both submitted letters to my chambers outlining their respective positions, which will be docketed along with this memorandum. (Letter from Donald B. Mitchell, Jr. dated February 21, 2017; Letter from Deborah J. Israel dated February 21, 2017.) In Pulte's letter, it indicates that it complied with the Court's order directing it to serve five documents requests on counsel for the citizen groups. In spite of this, the citizen groups still refuse to produce responses to the requests and are uncompromising in their position. In the letter submitted on behalf of the citizen groups, counsel notes that the citizen groups made an effort at compromise, but the proposed compromise was not sufficient for Pulte.

## II.    Analysis

Because Pulte and the citizen groups were unable to resolve their dispute, the Court must decide whether Pulte may obtain discovery from the citizen groups. In reaching a decision, the

---

[4] During the hearing, the Court also heard argument related to other discovery motions that are pending. These motions will be addressed in separate opinions.

Court will decide three questions. First, is there a First Amendment privilege available to the citizen groups under the circumstances of this case? Second, if the citizen groups can invoke such a privilege, does it apply to all of Pulte's discovery requests? Third, if the First Amendment privilege does not apply to some discovery requests, would allowing the discovery nonetheless impose an undue burden on the citizen groups? The Court will address these questions in turn.

### A.      Constitutional Avoidance

There are several preliminary matters to address at the outset. First, there is some disagreement between the parties to this case regarding the type of evidence that Pulte may use to prove its claims, at least with respect to Counts I, II, IV and V. In memoranda submitted in support of unrelated motions filed by the Defendants, the Defendants contend that Pulte will be limited to the evidence in the legislative record in proving its claims. Pulte disagrees that it is so limited and states that it intends to introduce evidence from outside the legislative record. If the Defendants are correct and Pulte is limited to the evidence in the public record in proving its claims, this would be dispositive to the motions related to the citizen groups. That is, there will be no need for Pulte to obtain discovery from the citizen groups if it will not be able to introduce it as evidence in support of its claims. But I have this case on a limited discovery referral and it would be imprudent for me to make this decision for a variety of reasons. If, for example, Pulte was denied access to discovery from the citizen groups because it is outside the record, but Judge Hazel determined that materials from outside the record may be used to prove Pulte's claims, Pulte would be unfairly prejudiced and the resolution of the case would be delayed. I decline to decide whether Pulte is limited to using only evidence in the legislative record to prove its claims.

Second, the citizen groups argue that the Court should not decide whether they have a valid First Amendment privilege vis-à-vis the subpoenas until it determines whether Pulte had a constitutional "property interest" under the test of *Gardner v. City of Baltimore*, 969 F.2d 63, 68 (4th Cir. 1992). (ECF No. 104 at 4-7.) The citizen groups reason that if Pulte is unable to establish that it "possessed a property interest in the [1994 Master Plan] that is cognizable under the Fourteenth Amendment's Due Process Clause," there will be "no need to reach the question of whether a purported deprivation was arbitrary or capricious." *Gardner*, 969 F.2d at 68. But this issue is not for me to decide; it is a dispositive issue that will be determined by Judge Hazel. It would be disruptive to the progress of this case if discovery were somehow bifurcated to allow the presiding judge to decide this issue before discovery related to the merits of Pulte's claims is allowed to proceed. The doctrine of constitutional avoidance "requires the federal courts to avoid rendering constitutional rulings unless absolutely necessary," *In re Under Seal*, 749 F.3d 276, 293 (4th Cir. 2010), but such a ruling is necessary here. In addition, ruling on the scope of the citizen groups' First Amendment privilege will further the "just, speedy, and inexpensive determination of every action and proceeding" by allowing this case to proceed in accordance with the controlling scheduling order. Fed. R. Civ. P. 1.

Third, the citizen groups argue that the Court should decide whether the information Pulte seeks is available from an alternative source (namely, the Defendants) before considering the First Amendment issues at stake. (ECF No. 104 at 6.) The Court will resolve whether the claims of privilege raised by the Defendants are valid in a forthcoming decision, but the Court's ruling on that issue will not be dispositive.[5] Even if Pulte prevails and the Court determines that

---

[5] The Defendants have asserted the legislative and executive privileges in connection with Pulte's discovery requests. The County's renewed motion for a protective order and Pulte's motion to compel are pending before the Court and ripe for decision. (ECF Nos. 113 & 116.) The

the Defendants cannot assert the legislative and executive privileges in connection with Pulte's requests, I am not satisfied that all of the material Pulte now seeks would be available from the Defendants in the first place. It is not clear to me whether the documents or communications that the citizen groups sent to the Defendants were always made part of the legislative record (although that might be the case). Under the circumstances, I believe it is reasonable to proceed with consideration of the citizen groups' assertions of the First Amendment privilege before deciding whether all of the documents Pulte seeks could be obtained directly from the Defendants.

### B.      First Amendment Privilege

The United States Constitution guarantees a right to association to engage in activities protected by the First Amendment, such as speech, assembly, and petition for the redress of grievances.[6] *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984); *NAACP v. Alabama.*, 357 U.S. 449, 462-63 (1958). These First Amendment protections apply in the context of discovery orders. *See Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987). Specifically, there is a qualified privilege against the discovery of information where compelled disclosure would likely chill associational rights. *See NAACP*, 357 U.S. at 462-63. This privilege applies to organizations as well as their members, *see Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 205

---

motions related to the Commission's assertion of these privileges (ECF Nos. 114 & 118) are not yet ripe for consideration because the Commission intends to submit a privilege log to Pulte. Depending on the scope of the Commission's discovery production and the nature of the materials listed on its privilege log, the Commission motions may become moot.

[6] The First Amendment provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

(S.D.W. Va. 2011), but it is not absolute. Courts have developed a two-part framework for evaluating First Amendment privilege claims in the context of discovery. *See Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010); *Grandbouche*, 825 F.2d at 1466; *Marfork Coal Co.*, 274 F.R.D. at 204-205; *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145 (D. Kan. 2010). In applying this framework, courts must carefully scrutinize the need for First Amendment protection. *NAACP* at 460-61; *Black Panther Party v. Smith*, 661 F.2d 1243, 1267-68 (D.C. Cir. 1981).

The first part of the framework requires the party asserting the privilege to make a prima facie showing that the privilege applies. *Id.* To make this showing, the party must "demonstrate an objectively reasonable probability that compelled disclosure will chill associational rights, *i.e.*, that disclosure will deter membership due to fears of threats, harassment, or reprisal . . . which may affect members' physical well-being, political activities or economic interests." *In re Motor Fuel*, 707 F. Supp. at 1153. To demonstrate an objectively reasonable probability of a chilling effect, the party asserting the privilege does not need to prove to a certainty that disclosure will result in chilling. Instead, the party "need only show that there is some probability that disclosure will lead" to a chilling effect. *Black Panther Party*, 661 F.2d at 1268. If the party asserting the privilege is unable to make a prima facie showing, there is no First Amendment privilege protecting against disclosure.

Once a party has made a prima facie showing, the second part of the framework requires the Court to engage in a balancing test. Here, the burden is largely on the party seeking disclosure to prove that the information sought is of crucial relevance to its case; that the information is actually needed to prove its claims; that the information is not available from an alternative source; and that the request is the least restrictive way to obtain the information. *See*

*Grandbouche*, 825 F.2d at 1466-67. The Court must then consider the substantiality of the First Amendment interests of the party asserting the privilege, *see Perry*, 591 F.3d at 1161, and determine "whether the privilege must be overborne by the need for the requested information." *Grandbouche* at 1466.[7]

There are cases that provide useful illustrations of how the test is to be applied. In *Grandbouche*, a tax protester sued various defendants, including Internal Revenue Service agents. 825 F.2d at 1464. The defendants sought in discovery information about, among other things, the membership list for the plaintiff's organization. The plaintiff refused to produce a list of his organization's members because "producing the requested information would infringe upon his First Amendment right of association." *Id.* at 1466. The district court disagreed and found that the First Amendment does not apply to discovery orders in private litigation. On appeal, the Tenth Circuit held that the district court erred by not considering the merits of the plaintiff's claim of First Amendment privilege. *Id.* at 1467. *Grandbouche* held that when a litigant claims a First Amendment privilege not to disclose information in discovery, a court must conduct a balancing test before ordering disclosure. *Id.* Among the factors to be considered are "(1) the relevance of the evidence; (2) the necessity of receiving the information sought; (3)

---

[7] Some courts have addressed the First Amendment interests only at the first part of the inquiry, and not as part of the balancing test. *See In re Motor Fuel*, 707 F. Supp. 2d at 1153 n.11 ("Here, the Court considers the validity of the privilege [only] in determining whether defendants have made a prima facie showing that the privilege applies.") That may be a useful approach in some cases—where only one discovery request is at issue, for instance—but its usefulness is limited under the circumstances of this case. I will consider the substantiality of the citizen groups' First Amendment interests balanced against Pulte's need for the information as to each specific request. Otherwise, the balancing conducted by the Court will be non-specific and will not account for an interest in protecting some types of information more than others.

whether the information is available from other sources; and (4) the nature of the information."[8]

*Id.*

In *Perry*, a case on which the citizen groups rely, two same-sex couples sued California state officials, alleging that Proposition 8 violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[9] 591 F.3d at 1152. A group of activists who were proponents of the anti-gay marriage legislation intervened to defend the suit. During discovery, plaintiffs sought information about the proponents' internal campaign communications relating to campaign strategy and advertising. *Id.* The proponents claimed a First Amendment privilege against disclosure, but the district court rejected the claim and ordered the proponents to produce the discovery. The Ninth Circuit granted the proponents' petition for writ of mandamus and held that discovery of the proponents' internal political organizing and strategizing documents could not be compelled without violating the First Amendment. *Id.* at 1165.

*Perry* also applied the two-part framework to consider the First Amendment privilege. First, the court found that disclosure might have a chilling effect on the exercise of protected activities by deterring participation in controversial political campaigns and deterring the free flow of information within campaigns. *Id.* at 1162-63. In reaching this conclusion, the court relied on declarations submitted by several proponents. Although "lacking in particularity," the declarations were "consistent with the self-evident conclusion that important First Amendment interests are implicated by the plaintiffs' discovery request." *Id.* at 1163. Second, the court conducted a balancing test and determined that disclosure would not be required. The court

---

[8] *Grandbouche* also held that a "court must also determine the validity of the claimed First Amendment privilege," *id.*, but it did not specify that the validity of the privilege should be established before conducting the balancing test.

[9] "Proposition 8 amended the California Constitution to provide that only marriage between a man and a woman is valid or recognized in California." *Id.*

applied a "heightened relevance standard" to determine whether the plaintiffs truly needed to obtain the information from the proponents. The court found that the plaintiffs' need for the information was somewhat attenuated from the evidence that would be most relevant to proving their claims. On the other side of the analysis, the court found that the proponents' First Amendment interests were substantial, which tipped the balance against disclosure. *Id.* at 1165.

In yet another case, the Black Panther Party and associated individuals sued the United States and certain government officials, alleging that they had conspired to destroy the group. *Black Panther Party*, 661 F.2d at 1246. During discovery, the defendants sought the group's membership list and the plaintiffs claimed a First Amendment privilege. The district court overruled the privilege claim and ordered disclosure. On appeal, the D.C. Circuit held that the lower court had erred by failing to conduct a balancing test, weighing the defendants' need for disclosure against the plaintiffs' need for First Amendment protection. Although the D.C. Circuit remanded the case to the district court to conduct the balancing test, it outlined several factors that would be relevant.[10] As to the relevance of the information sought, the court noted that the "interest in disclosure will be relatively weak unless the information goes to the heart of the matter, that is, unless it is crucial to the party's case." *Id.* at 1268 (internal quotation marks omitted). With respect to the availability of the information from alternative sources, the court stated that a party seeking disclosure must show "that he has exhausted every reasonable alternative source of information." *Id.* The court emphasized that "[i]nfringement of First Amendment interests must be kept to a minimum." *Id.*

---

[10] *Black Panther Party* was later vacated as moot, *Smith v. Black Panther Party*, 458 U.S. 1118 (1982), but "there is no suggestion in later case law . . . that its reasoning or analysis has been rejected or abandoned" by the D.C. Circuit. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002)

In *Marfork*, a coal mine operator sued environmental activists for trespassing and conspiring to close a mine operation through acts of civil disobedience. 274 F.R.D. at 194. The plaintiffs sought information about other members of the activists' groups and the defendants claimed a First Amendment privilege. The court first determined that the defendants made a prima facie case that the privilege applied because disclosure presented a probable chilling effect upon the membership and associational activities. *Id.* at 205. In conducting a balancing test, the court considered the plaintiff's argument that it requires the names of other possible conspirators in order to identify them as defendants. The court found that this was not a need compelling enough to outweigh the defendants' First Amendment interests. Citing *Grandbouche*, the court found that the First Amendment privilege prevailed against disclosure. *Id.* at 206.

The citizen groups heavily rely on *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 455 (D.D.C. 2002).[11] In that case, the State of Wyoming challenged several regulations and actions of the Department of Agriculture on procedural grounds. *Id.* at 451. In discovery, Wyoming sought documents from non-party witnesses. The non-party witnesses claimed a First Amendment privilege. In evaluating the privilege, *Wyoming* noted that "[m]embership lists are not the only information afforded First Amendment protection." *Id.* at 454. In conducting the balancing test, the court found that the plaintiff had not shown that the information sought goes

_____

[11] The citizen groups argue that this Court must address whether *Wyoming* is persuasive authority. (ECF No. 104 at 15.) It is persuasive authority to the extent that it shows how a court applies a balancing test to a claim of First Amendment privilege. But the case's value largely ends there. The First Amendment privilege balancing test is necessarily intertwined with the facts of a particular case. What may be relevant in one case may not be relevant in another. And, as I suspect was the case in *Wyoming*, the showing that a party challenging the privilege makes regarding relevance and necessity may be less in some cases. Obviously, the claims in *Wyoming* were different than the claims that Pulte asserts here. In addition, Pulte's stated reasons for requiring the information are different here than the reasons given by the plaintiff in *Wyoming*. To answer the citizen groups' question: the Court will treat *Wyoming* as persuasive authority, but it has limited persuasive value.

to the "heart of the lawsuit" or that it made reasonable attempts to obtain the information through alternative sources. *Id.* at 455.

Pulte cites *N.C. Electric Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981) in support of its position. *N.C. Electric* is also of limited value here. That case considered whether the *Noerr-Pennington* doctrine applies as both a defense to an anti-trust action and a bar against discovery of relevant materials. The court held that *Noerr-Pennington* is not a bar to discovery of relevant evidence. Citing *Herbert v. Lando*, 441 U.S. 153 (1979), the court noted that if "discovery into the internal affairs of a news organization does not have a chilling effect, then neither would discovery in this case." Of course, *Herbert v. Lando* concerned a defamation lawsuit against a newspaper and a plaintiff's request for discovery regarding the editorial process that led to the purportedly defamatory publication. Noting the special circumstances of the newspaper industry—that newspapers will likely continue to publish newspapers even if they must occasionally produce discovery in defamation lawsuits—the court in *Herbert v. Lando* ordered disclosure. *N.C. Electric*'s discussion of these issues is limited. The decision itself is less than four pages long and only the last page touches upon discovery. For these reasons, *N.C. Electric* adds very little to Pulte's argument.

Pulte also relies on two other opinions, both of which are in the case of *United States v. Duke Energy Corp.*, 218 F.R.D. 469 (E.D.N.C. 2003), *upheld on review*, 2012 WL 1565228 (E.D.N.C. 2012). These opinions dealt with a discovery request from the Environment Protection Agency to Duke Energy seeking information about what Duke Energy knew about the meaning of a regulation in question (namely, communications received from a utility trade group, UARG). 218 F.R.D. at 472-73. UARG moved for a protective order on First Amendment grounds. The court rejected the First Amendment claim because the information sought was

narrowly tailored to an issue relevant in the litigation. *Id.* Even though the information sought related to UARG's associational activities, its relevance in the lawsuit outweighed UARG's First Amendment interests in non-disclosure. The *Duke Energy* cases illustrate that when a court is asked to consider whether disclosure of information that implicates First Amendment associational rights should be required, the required analysis is fact-intensive. In *Duke Energy*, the balance weighed in favor of the party seeking the information because it was directly relevant to issues at stake in the case and because the party asserting the claim of privilege relied only on conclusory arguments. The *Duke Energy* cases do not stand for the proposition that courts should be quick to overrule First Amendment privilege claims.

### C.     Two-Part Framework

Having considered the analysis employed by other courts regarding the First Amendment privilege in discovery, the Court will now consider whether the citizen groups have established that disclosure will result in a probable chilling effect and whether disclosure is nonetheless warranted given the balance of interests.

#### 1.     Part One: Chilling Effect

I find that the citizen groups have made a prima facie showing that the First Amendment privilege applies. The citizen groups argue that enforcement of Pulte's subpoenas will result in a chilling effect on their associational rights in three ways: "(1) membership withdrawal, or discouragement of new members, (2) reduced and constrained involvement in debates over land use, and (3) other consequences which might objectively suggest an impact on, or 'chilling' of, the members' associational rights." (ECF No. 95 at 38.) By their declarations (ECF Nos. 95-4 to 95-15), the citizen groups have demonstrated an objectively reasonably probability that compelled disclosure of the information sought will result in these chilling effects.

For example, Lisa Alexander of the Audubon Naturalist Society states in her declaration (ECF No. 95-6) that if the subpoenas are enforced, her organization's efforts to collaborate on environmental advocacy strategies will be deterred for fear that their collaborative efforts will be subject to future public disclosure. She also states that diversion of her organization's efforts from environmental activism to collecting discovery responses would likely reduce member participation in her organization. Similarly, Ann Smith of the Seneca Creek Watershed Partners states that her organization will be less inclined to voice its opinion at public hearings or work with Montgomery County in the future if the subpoenas are enforced. (ECF No. 95-8.) In her declaration, Diane Cameron states that she has already observed citizens and representatives of environmental groups express concerns about the consequences of opposing a proposed development project in terms of opening themselves and their organization up to discovery in litigation, even if the groups are not alleged to have committed any wrongdoing. (ECF No. 95-5; *see also* ECF No. 95-12 ("One volunteer said that they wouldn't be comfortable volunteering with Sierra Club if it meant potentially sacrificing their personal privacy.").)

Pulte argues that the declarations submitted by the citizen groups are speculative and unsubstantiated. When similar evidence has been presented in other cases, however, courts have found the evidence sufficient to establish a First Amendment chilling effect. *See AFL-CIO v. Federal Election Comm'n*, 333 F.3d 168, 176 (D.C. Cir. 2003) (finding that likelihood of making it more difficult for organizations to recruit future personnel is a chilling effect); *Perry,* 591 F.3d at 1163 (accepting that disclosure of personal, non-public communications expressing moral views would make individuals less willing to engage in such communications and that this constitutes a chilling effect). A chilling effect need not be established with mathematical certainty, and it need not be as compelling of an effect as in *NAACP*, 357 U.S. 449, where rank-

and-file members of the NAACP had on past occasions been subject to "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility." *See AFL-CIO*, 333 F.3d at 176 ("Although we agree that the evidence in this case is far less compelling than the evidence presented in cases involving groups whose members had been subjected to violence, economic reprisals, and police or private harassment, . . . that difference speaks to the strength of the First Amendment interests asserted, not to their existence.")

Applying common sense yields the same result. (*See* ECF No. 95 at 49 n.15.) If a person knows that her communications will be disclosed to an unintended audience in the future, she may be more cautious in her statements or refrain from speaking entirely. In the same way, a person who belongs to a group that is required to disclose its internal communications in civil litigation may decide that the invasiveness of the disclosure outweighs the benefit of belonging to or participating in the group. The citizen groups have provided a sufficient basis for the Court to determine that if disclosure is compelled, there is an objective probability of a chilling effect on the citizen groups' exercise of First Amendment associational rights.

### 2. Balancing Test

By letter dated February 1, 2017, and as directed by the Court's order (ECF No. 129), Pulte served five document requests on the citizen groups. The Court will only discuss these five requests and not the requests contained in the original subpoenas.[12] Although the five requests are related to the original requests contained in the subpoenas (*see* Mitchell Ltr, Attachment at 1-2), they are considerably more narrow in scope. They are also easier to understand.[13] Most

---

[12] Copies of the subpoenas are available at ECF Nos. 85-5 to 85-12 and 86-5 to 86-9.

[13] The document requests contained in the subpoenas are exceptionally broad and over-inclusive. In addition, some of the requests are repetitive and others are hard to decipher.

importantly, the revised requests are tailored to the information that in Pulte's view is the most crucial to being able to prove its claims.

In considering these five requests, I will address four factors.[14] Three factors take into account Pulte's need to obtain the information from the citizen groups and one factor accounts for the citizen groups' interests in being free to exercise their First Amendment rights. The first factor is the relevance of the information sought and whether it is of central or crucial importance to the case. *See Perry*, 591 F.3d at 1161; *Grandbouche*, 825 F.2d at 1466. The second factor is the necessity of the information sought. *Id.* In considering this factor, I will also consider whether Pulte is seeking the information out of an actual need or because of improper ulterior motives. *See Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 210 (N.D. Cal. 1983). The third factor is the availability of the information from alternative sources. *Perry*, 591 F.3d at 1161; *Grandbouche*, 825 F.2d at 1466. The fourth factor is the substantiality of the First Amendment interests at stake. *Perry*, 591 F.3d at 1161; *Black Panther Party,* 661 F.2d at 1267 ("The argument in favor of upholding the claim of privilege will ordinarily grow stronger as the danger to rights of expression and association increases."). Ultimately, I will balance Pulte's interest in disclosure against the burden imposed on the citizen groups to determine whether Pulte's interest in disclosure outweighs the burden on the citizen groups. *Perry*, 591 F.3d at 1161.

### a.      Request No. 1

Pulte's first request seeks the following:

---

[14] Some courts have considered whether potentially chilling discovery requests are the "least restrictive means" of obtaining the information. *Grandbouche*, 825 F.2d at 1466. This factor does not seem relevant to the present dispute. To the extent that this factor is meant to consider the availability of the information from other sources, it is repetitive. If it is meant to consider the possibility of obtaining discovery through other means, such as a deposition or interrogatories, no party has addressed this point. It appears that document requests are the least restrictive discovery method for obtaining the information Pulte seeks.

> All science and data (including without limitation, all analyses, calculations, data, modeling, methodology, reports, sampling, and related information) regarding all watersheds or subwatersheds that discharge into Little Seneca Lake (the "Watersheds"), including Ten Mile Creek.

The citizen groups do not object to producing "every piece of scientific sampling data that they have themselves developed over the last twenty years or so regarding Ten Mile Creek and nearby watersheds, whether they provided it to the County or not." (Mitchell Ltr. at 2-3) Because they do not object to producing this information, the citizen groups will be ordered to do so. Regarding data that they have obtained from outside sources, however, the citizen groups have two objections. First, Pulte could obtain the data from the outside sources ("like libraries, government agencies or the internet") on its own. Second, the citizen groups' development of legal and scientific strategies to petition the government may be reflected in these outside sources. Pulte notes that it has attempted to obtain data regarding the Watersheds from third parties, but it "does not know and cannot identify everyone who was providing data, input, and advice to Defendants and their consultants behind the scenes." (Israel Ltr. at 3.) If the citizen groups have this information readily available, Pulte argues that they should be ordered to produce it.

In its initial motions to compel, Pulte notes that "[a] central theory in this litigation is that the Defendants made a series of arbitrary, capricious, and unreasonable Decisions." (ECF Nos. 85-1 at 26 & 86-1 at 21.) Pulte argues that what the citizen groups "considered, offered, and withheld" from the Defendants—especially related to scientific data and modeling—is relevant to the question of whether the Defendants' decisions are rational (*i.e.*, supported by sufficient scientific evidence). (ECF No. 86-1 at 21.) Pulte states that it will prove at trial that the citizen groups "tainted the testimony and science upon which Defendants relied." (*Id.* at 22.) By way of example, Pulte notes that Diane Cameron has "anti-development allegiances," is "scientifically

ill-informed," and "pushed for arbitrary, capricious, and unreasonable government action." (*Id.*) To the extent that the Defendants' decisions were influenced by Cameron and the scientific models she promoted, this would be relevant to Pulte's claims. The same goes for the other citizen groups as well.

Turning to the first factor, science and data that the citizen groups sent to the Defendants is relevant to Pulte's claims. If, for example, the citizen groups sent a scientific report to the Defendants that contained outdated or discredited science, Pulte might use this to attempt to prove that the Defendants' decisions were arbitrary for relying on outdated or discredited science. What the Defendants considered is central to Pulte's claims.[15] Any science that was not sent to the Defendants, however, is not central to Pulte's claims because if the Defendants did not consider it, it could not have influenced their actions.

The second factor is whether Pulte has a need for the information sought. I conclude that it does. Although Pulte's complaint is lengthy, it argues that it is still in the dark about some aspects of what information the Defendants considered and how they made their decisions. Pulte *may* obtain all of the science that the Defendants relied on from the legislative record and in the discovery it receives from the Defendants. But it is not clear to me from the submissions whether everything transmitted to the Defendants was incorporated into the legislative record. Although I do not completely disregard the citizen groups' argument that Pulte has ulterior motives aimed at retribution and intimidation, this concern is not substantial in connection with this request.

Applying the third factor, some of the information sought by Pulte will be available from alternative sources. For example, scientific data that the citizen groups have collected over the

---

[15] As previously noted, there is a dispute over whether Pulte may rely on evidence from outside the legislative record to prove its due process and equal protection claims. As I stated, that issue is not before me. Nothing that I say in this memorandum should be interpreted as expressing any opinion on this issue.

years from third parties should be available from those third parties. And the scientific data that was transmitted to the Defendants may very well be available from the Defendants in the legislative record.

Finally, I consider the substantiality of the citizen groups' First Amendment interests in connection with this request. Many of the citizen groups exist to engage in political activism, often backed by scientific data, to protect the environment from perceived threats from development projects like the one at issue in this case. The effectiveness of these groups depends not on keeping the science on which they depend hidden, but in using it in political advocacy. In that regard, disclosure of the science that is used to convince local government decisionmakers to side with the citizen groups' environmental interests over the interests of developers would not result in any chilling effect on the citizen groups' First Amendment rights. Science that the groups did not disclose to the local government decisionmakers, however, is a more complicated issue. Political activists, like all advocates, must choose the arguments and facts that best support their position. Unless required to do so by an ethical obligation or statute of which I am unaware, the citizen groups are not required to disclose everything they know. If information that the groups withheld is disclosed, political opponents might use the information to divine the groups' current and future strategies. Opponents might also use the withheld data to determine the weaknesses in the arguments made and data used by the citizen groups. Such disclosure presents a moderate risk of chilling because the citizen groups could become reluctant to engage with outside groups and solicit additional scientific data (some of which may not support their positions) if they know that they may be required to turn it over to their political opponents in future litigation.

In balancing Pulte's interest in disclosure of the science against the burdens imposed on the groups' exercise of First Amendment rights, I find that the balance does not completely favor either side. Pulte's interest in obtaining the science that the citizen groups transmitted to the Defendants outweighs the citizen groups' limited interest in the non-disclosure of this information. There is almost no danger of a chilling effect on the groups' associational rights by disclosure of such information. But the citizen groups' interest in the non-disclosure of any science in its possession that it did not send to the Defendants outweighs Pulte's interest in that information. And importantly, this science is probably not relevant to Pulte's claims at all, let alone of central importance. For these reasons, the First Amendment privilege protects against disclosure of the science and data that the citizen groups did not send to the Defendants.

**b.      Request No. 2**

Pulte's second request seeks the following:

> All communications with government entities, their consultants, or other third parties (such as academics or scientists) regarding the Watersheds or development within the Watersheds. This Request does not include communications between and among any of the Non-Party Citizen Groups.

The citizen groups' communications with the Defendants are relevant to Pulte's claims. Information that was available to the Defendants, including information received from the citizen groups, will be relevant in determining whether the challenged decisions violate Pulte's constitutional rights to due process and equal protection.[16] But to the extent that this request seeks communications with entities besides the Defendants, this information is not relevant to Pulte's claims. What matters in this case is whether Pulte's rights were deprived without due process or in violation of the equal protection clause. The answers to these questions will turn on

---

[16] The citizen groups argue that no information in their possession is relevant to Pulte's takings claim. Pulte does not appear to dispute this point. (*See* ECF No. 104 at 4.)

the merits of the Defendants' decisions, and not the decisions of any other government entities or third parties.

As to the second and third factors, Pulte has a need for communications between the citizen groups and the Defendants. These communications may or may not be part of the legislative record; the Court cannot be sure. And while Pulte may indeed have ulterior motives, communications with the Defendants are evidence of the information that was available to Defendants. Pulte will need this material to prove that the Defendants made arbitrary decisions. The communications may also contain evidence of improper ex parte contacts. (ECF No. 103 at 13.) Although it is not clear to me that any such contacts would have been at all improper, that decision is one for the presiding judge to make. As long as Pulte's procedural due process claim is viable, it needs this information to prove the claim.

Next I must consider the citizen groups' First Amendment interests in connection with this request. The citizen groups' communications with the Defendants are possibly already part of the legislative record. I am not persuaded—and the citizen groups did not focus their argument on this point—that disclosure of any such communications would have a substantial chilling effect on the citizen groups. But to the extent that Pulte seeks documents containing the citizen groups' communications with others besides the Defendants, the burden becomes more substantial. The citizen groups have an interest in the non-disclosure of the communications it had with third parties. These communications—even if communications between the citizen groups themselves are excluded—could illuminate the groups' strategies to their political opponents. This raises substantial First Amendment concerns.

Pulte's interest in obtaining the citizen groups' communications with the Defendants outweighs the constitutional burden on the citizen groups in disclosing the materials. These

communications will be evidence of what information the Defendants had available for consideration in making their decisions, which is relevant to Pulte's claims. But communications that the citizen groups had with individuals or entities other than the Defendants are not so centrally relevant to Pulte's claims. The citizen groups' First Amendment interest outweighs Pulte's interest in the disclosure of these materials.

### c.     Request Nos. 3, 4, and 5

Pulte's third request seeks the following:

All communications with government entities, their consultants, any professionals (scientific or academic), or other third parties regarding Pulte's Property. This request does not include communications between and among any of the Non-Party Citizen Groups.

Its fourth request seeks:

All communications with government entities, their consultants, any professionals (scientific or academic), or other third parties regarding the application or use of (i) environmental site design or (2) the impervious cover model within the State of Maryland. This Request does not include communications between and among any of the Non-Party Citizen Groups.

Its fifth request seeks:

All communications with government entities, their consultants, any professionals (scientific or academic), or other third parties regarding the 2014 Master Plan Amendment. This Request does not include communications between and among any of the Non-Party Citizen Groups.

The analysis for these requests mirrors the analysis for Request No. 2. Communications that the citizen groups had with the Defendants regarding (1) Pulte's property, (2) the use of environmental site design or the impervious cover model, or (3) the 2014 Master Plan Amendment constitute evidence of the information that the Defendants considered in making the challenged decisions. Because it is not certain that such communications were incorporated into the legislative record, Pulte may not be able to obtain them from the Defendants. To the extent

that the communications contain evidence of what Pulte may contend the Defendants improperly relied on (or improperly failed to consider), this may be useful as Pulte attempts to prove its claims. The same goes for any communications that concern the purportedly improper ex parte communications that Pulte believes violated its right to procedural due process.

The citizen groups' First Amendment interests in preventing disclosure are not substantial in relation to communications with the Defendants. But the citizen groups' interests in preventing disclosure of communications with entities and individuals besides the Defendants are stronger. These communications might illuminate the strategies that the citizen groups employed in the past or will employ in the future regarding their exercise of First Amendment rights.

The balancing test for these three requests yields the same result as for Request No. 2. Pulte's interest in obtaining the citizen groups' communications with the Defendants outweighs the constitutional burden imposed by disclosure. These communications will be evidence of the information that the Defendants had available for consideration in making their decisions and are relevant to Pulte's claims. But communications that the citizen groups had with individuals or entities other than the Defendants are not evidence of crucial relevance to Pulte's claims. The citizen groups' First Amendment interests outweigh Pulte's interest in the disclosure of these materials.

### D.    Burden

Having substantially narrowed the requests to which the citizen groups will be required to respond in light of their First Amendment privilege, I now turn to determining whether a response would impose an undue burden on the citizen groups. Rule 45(d)(3)(A)(iv) provides that a court is required to quash or modify a subpoena if compliance with the subpoena would

subject a person to an undue burden. In determining whether to limit discovery because of an undue burden, courts "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014).

The citizen groups argue that compliance with the subpoenas would impose "an extreme burden" on the citizen groups "whose only connection to the underlying litigation is their exercise of their constitutionally protected First Amendment rights." (ECF No. 95 at 55.) In addition to being a burden in practical terms of responding to the subpoena's document requests, the citizen groups argue that the subpoenas "penaliz[e] them for exercising their First Amendment Rights." (*Id.* at 56.) By their declarations, the citizen groups approximate the effect that compliance with the subpoenas would have on their organizations. (*Id.* at 58.) Some of the organizations are small non-profits with no paid staff. (*Id.*) Others are larger, but stress that compliance would divert their employees from furthering the groups' core missions. (*Id.* at 58-59.) The citizen groups note that "[s]ome of these organizations would crumble under the pressure of responding to these subpoenas." (*Id.* at 59.) And importantly, the citizen groups note, they are non-parties to this case and the Court should be sensitive to the burdens of discovery on non-parties. (*Id.* at 55-56.)

Pulte argues that the citizen groups' declarations are "generalized, non-specific, and conclusory" and do not offer "any facts to justify any of the estimates" regarding the asserted burden. (ECF No. 103 at 21.) Specifically, the declarations contain "no information regarding the volume of documents" in the possession of the citizen groups, and no information about the manner in which they are stored. (*Id.*) Pulte also notes that the citizen groups exaggerate the likely impact of responding to the subpoenas. (*Id.* at 22-23.) For instance, Ann Smith of the

Seneca Creek Watershed Partners states in her declaration that if required to respond, she would need to "spend several hours going through emails, files and personal notes." (ECF No. 95-8.) Pulte suggests that spending a few hours looking for responsive documents is not an undue burden. (ECF No. 103 at 23 n.10.) Pulte also notes that the citizen groups are not innocent bystanders in this litigation and have an interest in its outcome. (*Id.* at 23-24.)

In considering the burden that will be imposed on the citizen groups in responding to the subpoenas, I will take into account several factors. First, the citizen groups are not parties to this case and will not be named as parties in the future. Second, by and large, the citizen groups are either individuals or small non-profit organizations with limited paid staff, and presumably limited experience in responding to discovery requests. Third, Pulte is entitled to obtain discovery that is relevant to its claims, even if obtaining the discovery is a moderate burden on other parties and non-parties.

Considering the declarations submitted by the citizen groups along with the legal arguments raised by Pulte, I find that compliance with the modified subpoena requests will not impose an undue burden. Although the citizen groups are not parties to this case, they do possess relevant information. While I am sensitive to the impact that responding to discovery has on non-parties, this is not a significant factor. I have narrowed the requests contained in the subpoenas dramatically and it will not be an undue burden for the citizen groups to respond to the modified requests. In addition, while some of the citizen groups are small, it is likely that the smaller groups possess significantly fewer responsive documents than the larger groups. While every discovery production imposes *some* burden on parties and non-parties alike, I find that the modified subpoena requests do not impose an *undue* burden on the citizen groups. Finally, I must consider Pulte's interests in obtaining discovery from the citizen groups. My cursory review of

pertinent case law suggests that it may be very difficult for Pulte to ultimately prove its due process and equal protection claims. *See, e.g., Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810 (4th Cir. 1995). I believe it is fair and reasonable to permit Pulte the opportunity to obtain as much discovery as is relevant to its case.

While the arguments of the citizen groups focused on the labor-intensiveness of responding to the subpoenas, they never addressed cost concerns. If the citizen groups believe that they will incur a substantial and unduly burdensome expense in responding to the modified requests, I will consider shifting these costs to Pulte. If the discovery it seeks from the citizen groups is as crucial as it argues, the ends of justice may require Pulte to pay for it. However, before incurring any such expense, the citizen groups must first confer with Pulte in an attempt to reach an agreement. If no agreement is reached, Pulte and the citizen groups must request a telephone conference with me to discuss the issue informally before resorting to filing any more motions or incurring any expense for which the citizen groups will seek to be reimbursed.

## III.    Conclusion

In summary, I find that the citizen groups possess a qualified First Amendment privilege in connection with the subpoenas issued by Pulte. As initially drafted, the requests contained in the subpoenas impose a burden on the citizen groups' First Amendment associational rights that is not outweighed by Pulte's interest in obtaining the information. Pulte's modified subpoena requests, however, do not pose the same problem. The citizen groups' First Amendment interests are not substantial enough in relation to parts of these requests to warrant quashing the subpoenas in their entirety. The citizen groups will be ordered to produce documents responsive to the modified requests as outlined below. Such responses shall be produced to Pulte by April 28, 2017.

For Request No. 1, the citizen groups shall produce responsive documents that the groups sent to the Defendants during the relevant time period. The citizen groups shall not be required to produce responsive documents that they did not send to the Defendants during the relevant time period, except for the "scientific sampling data that they themselves have developed over the last twenty years or so regarding Ten Mile Creek and nearby watersheds," which they must produce (*See* Mitchell Ltr. at 2)

For Request Nos. 2, 3, 4, and 5, the citizen groups shall produce responsive documents reflecting their communications with the Defendants during the relevant time period. The citizen groups shall not be required to produce documents that reflect their communications with individuals or entities other than the Defendants.

The parties' rights to file objections to this memorandum and order are outlined in Rule 72(a) and Local Rule 301.5(a). These rules provide that any party wishing to object may do so in writing within 14 days of the date of this decision. Unless otherwise ordered, the filing of objections will not operate as a stay of any obligation or deadline imposed by this decision.

An accompanying Order follows.

March 24, 2017                                          /s/
Date                                                   Timothy J. Sullivan
                                                       United States Magistrate Judge